(78 South. 137.

No. 22778.

JACKSON et al. v. TEXAS CO.

(Feb. 25, 1918.)

*(Syllabus by the Court.)*

1. GAS ⬥⟲16, 18—PIPE LINES—CARE REQUIRED—PERSONAL INJURY—LIABILITY.

There rests upon the owner of a pipe line, conveying so dangerous a fluid as natural gas through what has the appearance of, and is commonly used as, a public highway, in an inhabited place, the obligation to exercise vigilance commensurate with the danger and of a character to protect the public, in person and property, from injury and destruction; and, where it appears that a leak in the pipe had existed for at least five months, that the escaping gas could be heard, and often was heard, by passers on the highway, and, when lighted, as it often was lighted, could be seen, and was seen, at night throughout the neighborhood, and where it further appears that the owner did not learn of the leak until after an accident whereby a child was injured, that the inspection of the line was perfunctory and inefficient and was not likely to have furnished that information until after some injury had been inflicted or property destroyed, it must be held that such owner was guilty of negligence in failing to make an earlier discovery of the leak, and became liable for the consequences, to the same extent as though the discovery had been so made and the leak had nevertheless been allowed to continue.

2. GAS ⬥⟲18—NEGLIGENCE—CHILDREN—DANGEROUS PREMISES.

The doctrine that it is not the duty of the occupier of land to make it safe for infant children who come upon it without invitation, and merely by sufferance, has no application to a case where the occupier has taken no steps to inform the public of his occupancy, but, having established something which is at once attractive and dangerous to young children upon land which has all the appearance of a public highway, and is so used by the public, including the children, has failed either to give notice that the place is not open to the public, or to take the proper precautions to protect the public, including the children, against the danger which he has there created, and from exposure to which a child has been injured.

3. GAS ⬥⟲18—NATURAL GAS PIPE LINE—INJURY TO CHILD—LIABILITY—PROXIMATE CAUSE.

Where a company handling natural gas negligently allows a leak to exist in its pipe line upon land which has the appearance of, and is commonly used as, a public highway, in a settled neighborhood, and young children, including a boy and girl, aged, each, about six years, attracted by the escaping gas, play with it in various ways, until the boy lighting it at the request of the girl, the girl is badly burned, the boy, by thus intervening, can no more shift the blame for the accident from the company to himself than can the injured girl, and neither of them being legally responsible or capable of appreciating the probable consequence of yielding to the temptation held out to them through the negligence of the company, that negligence must be regarded as the proximate cause of the accident, and the company is liable in damages for its consequences.

Appeal from First Judicial District Court, Parish of Caddo; R. D. Webb, Judge.

Suit by J. S. Jackson and Emma Jackson, for the use and benefit of their minor child, Burdette Jackson, against the Texas Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Hampden Story, of Shreveport, for appellant. W. B. Massey, of Shreveport, for appellees.

### Statement of the Case.

MONROE, C. J. Defendant has appealed from a verdict and judgment for $5,000, recovered by plaintiffs, suing on behalf of their minor child, a girl aged about six years, on account of personal injuries sustained by her through defendant's alleged negligence.

It appears from the evidence that plaintiffs, with their children, lived on Mansfield road, in the suburbs (as we take it) of Shreveport, and that along the side of their house was a path extending from that road to the Texas Pacific Railway, which path was open to, and used by the public, and beyond which, from 6 to 10 feet, and some 25 feet from plaintiffs' house, also upon or in ground that was open to the public, was a gas pipe line whereby defendant conveyed natural gas, for its own purposes, from one place to another. It is not altogether clear whether the path itself was on private ground or ground that was set apart for a street, but the evidence shows that the piping in question was laid to a depth of about 10 inches below the surface of privately owned land, through which defendant, or its authors in title, had acquired a right of way, and it is possible that the land over which the path ran was also of that character. However that may be, the pipe sprang a leak; the children in the neighborhood made the discovery; and as the point at which the leak occurred was as much open to the public as the path, and quite near the path, it became a place of resort for them, and the lighting of the gas and the using of the fire thus created for the roasting of peanuts and other purposes became one of their recreations. The plaintiff J. S. Jackson was an engineer whose employment kept him away from home a great deal, and he testifies that upon one occasion when he was at home, realizing that the gas was dangerous, he filled the hole that appeared in the ground above the leak and set up an inch pipe, about 7 feet long, in such a fashion as to catch the leakage and carry it above the heads of the children, and warned them not to fool with the pipe, but it seems that after they had amused themselves for perhaps a few days by lighting the gas as it escaped from the top of the pipe, they reverted to their own methods, and upon a day in October, 1916, one of them, a little past six years old, at the instance of the little girl about the same age, lighted the gas near the ground, and there being some loose paper lying about, the paper caught fire, and set fire to the clothing of the little girl, burning her very severely and inflicting injuries which seem likely to prove permanent, and to threaten still others. Mrs. Jackson, the mother of the little girl, testifies that she had forbidden her to ignite the gas, but she had other small children and other cares and was unable to see that her prohibition was observed, and the gas was ignited during a good part of the time within the several months which preceded the accident. Mrs. Jackson also made an attempt to have the leak stopped by speaking about it to a representative of the Southwestern Electric Company, which company she assumed was the owner of the pipe, but as that company was not the owner and felt no interest in the matter, nothing was done. In addition to being made known by being made visible, the gas at other times attracted attention by making itself heard; that is to say, a funnel shaped hole which had been formed, or perhaps scratched by the children, in the ground just

above the leak, would get filled with rain water and the gas, bubbling up through it, could readily be heard at a considerable distance, and attracted the attention of a number of persons, who testified to that effect; one of the witnesses having observed it as far back as the month of May—some five months before the accident—and the burning gas was seen at night from the gallery of a house 400 feet distant. About the only person who might have been expected to know of the existence of the leak, but who remained ignorant of it, until after the accident, was defendant's "line walker," who was employed to do no other work than walk the lines and see that they were in order. He testifies that he "walked the line" in question on August 6th, September 14th, and October 1st, and had walked it prior to that time; that he would usually make one trip a week, which does not seem to fit in with his testimony as to the intervals between the dates of his walks previously given. He also testifies that his average gait was 3½ to 4 miles an hour, which, though slow for fighting aeroplanes, is a fair pace for an inspector. On the other hand, there are several witnesses who did not seem to understand how it would be reasonably possible for a person to walk along the path and not become acquainted with the fact of the leak. Defendant's superintendent of its pipe line department testified that he and another man walked over the line about the middle of September, 1916, and passed the point where the leak existed, but observed no escape of gas; that the pipe was buried at that point from 8 to 12 inches; that he saw no burnt spot, or any indication that the pipe had been tampered with; that the dirt over the pipe was compact and settled, and, if there had been a hole there, he would have seen it. But on his cross-examination he gave the following testimony:

"Q. At the time you passed over this pipe line, were you looking for leaks in it? A. No, sir; general inspection. Q. You just walked along there, like anybody else? A. Yes, sir; if there was a leak there, I would have noticed it though."

And on his re-examination in chief he testified as follows:

"Q. What was your purpose in walking that pipe line at that time? A. As a general inspection of lines. Q. What is the purpose of inspection; is that to look for leaks? A. No. reason particular. Q. Well, what was the idea in walking it—just to take a promenade? A. Well, general inspection; just to see whether there is anything to be seen that you might want to see. If there was a leak there, I would have noticed it."

That there was a leak there, that it had been there for at least five months prior to October 6, 1916, and that it attracted the attention of persons who were not inspecting the line and had no interest in finding it, is abundantly shown by the testimony of eight or ten witnesses, from which, and from the testimony of defendant's inspectors, we conclude that the inspections made by them were perfunctory and inefficient and not such as the occasion required.

The little girl was burned upon the back part of her person and legs, in some places very deeply, and, after being treated for two months at a sanatarium, was left with a slight limp and several areas of scar tissue which hold out no very encouraging prospect for the future. The surgeon who attended her testifies that, as matters now stand, the injuries are permanent, but that, by removing the scar tissue and grafting live skin in its place, a complete recovery may be effected. Another surgeon, called by plaintiff for the purposes of the case, was of a different opinion. He did not think grafting would effect a complete cure, or that an operation is advisable at this time, or unless the scars grow larger, and he expressed the opinion that in the future they will probably develop malignant trouble.

### Opinion.

[1] Using the methods of inspection to which defendant's witnesses have testified, it

does not appear to us that its inspectors would have been likely to discover a leak in its pipes, save by some such consequence as injury to persons or destruction of property, and, as the obligation rested upon defendant in conveying so dangerous a fluid as natural gas through a place which had all the appearance of a public highway, and was commonly so used, to exercise vigilance commensurate with the danger, and of a character to protect the public, in person and property, from injury and destruction, its failure to exercise such vigilance was negligence, for the consequences of which it should be held liable to the same extent as though it had discovered the leak and had failed to stop it. Wolff v. Shreveport Gas, E. L. & P. Co., 138 La. 743, 70 South. 789, L. R. A. 1916D, 1138; Koelsch v. Philadelphia Co., 152 Pa. 355, 25 Atl. 522, 18 L. R. A. 759, 34 Am. St. Rep. 653; Pine Bluff Water & Light Co. v. Schneider, 62 Ark. 109, 34 S. W. 547, 33 L. R. A. 366.

[2, 3] The counsel for defendant cites authority to the effect that it is not the duty of an occupier of land to exercise care to make it safe for infant children who come upon it without invitation, and merely by sufferance, which is sound enough doctrine when properly applied, but it has no application to a case where the occupier has taken no steps to inform the pubic of his occupancy, but, having established something which is at once attractive and dangerous to young children upon land which has all the appearance of a public highway and is so used by the public, including the children, fails either to give notice that the place is not open to the public, or to take the proper precautions to protect the public, and the children, against the danger which he has there created.

The learned counsel also cites authority to the effect that, although one may negligently create a condition of potential danger from which injury to another results, yet if such injury is immediately produced by the act of a third person intervening, the act, and not the negligent creation of the condition, by reason whereof alone it becomes effective, is the proximate cause of the injury; and that doctrine, no doubt, finds proper application in some cases; but this is not one of them, since the "intervener" here, being about the same age as the child that was injured, was no more capable of shifting the blame for the accident from the defendant to himself than was the injured child. He ignited the gas because the little girl told him to do so, but, as neither of them was old enough to appreciate the consequence of the act so directed and performed, the responsibility for that consequence rests upon the defendant, as the creator of the condition which suggested the act to the immature minds of the children, and at the same time made its performance a source of danger to them. In United States Natural Gas Co. v. Hicks, 134 Ky. 12, 119 S. W. 166, 23 L. R. A. (N. S.) 249, 135 Am. St. Rep. 407, it was held (quoting the syllabus):

"(1) The negligence of a gas company in maintaining in a public highway a leaky gate valve in its main, inclosed by a cracked and decayed box, and not the act of a four year old boy, in throwing a match through the crack into the box, is the cause of an explosion of the gas to the injury of a person in the highway.
"(2) The question of the contributory negligence of an eight year old child, in playing near a leaky gate valve in a gas main, cannot be decided by the court as matter of law, although he had been warned by his parents to keep away from it."

Upon the question whether the condition brought about by what we have held to have been the negligence of the defendant constituted an attraction which was likely to lead young children into trouble, we entertain no doubt. There was the gas at large in their very playground, unsecured, unguarded, unattended, and ever ready to be converted, by a lighted match, into the fire of a blacksmith's forge, of a baker oven, of a laundry furnace, or peanut roaster, or into an illu-

mination which could be seen at night from all the residences round about. Nothing more attractive to a child could have been devised; nor have we any doubt that to the situation so created, and its consequences, there should be applied the following principle of law, as expressed in the syllabus of an opinion heretofore handed down by this court, to wit:

"Where a defendant negligently leaves exposed in a public place, unsecured, unguarded, and unattended, a dangerous machine likely to attract children, excite their curiosity, and lead to their injury, while they are pursuing their childish instincts, a child of tender years injured by said machine, while meddling with it, is entitled to recover damages for the injury inflicted." Westerfield et al. v. Levis Bros. et al., 43 La. Ann. 64, 9 South. 52.

And the principle is none the less applicable that, in the case cited, the attractive and dangerous thing left exposed was a machine, and not an invisible and inodorous, but highly combustible and inflammable, gas, or that it was left in what was really a public highway, and not in a place which was commonly believed to be, and used as, had the appearance of, and bore no signs to indicate that it was not, a public highway.

Plaintiffs' counsel ask that the amount awarded by the jury be increased. Defendant's counsel think it should, in any event, be reduced. Defendant, upon the advice of its counsel, acted most humanely and liberally with the plaintiffs in the beginning. Being informed of the accident, and that plaintiffs were unable to make proper provision for the child, it directed that she be placed in the sanitarium at Shreveport, provided with day and night nurses, with such surgical attention as the case required, and so long as it was required, and the child was withdrawn from the sanitarium, and, as it appears to us, from the treatment so provided, at the instance of the plaintiffs (or of her mother), and not of the defendant. The amount paid by defendant exceeded $500, and it was willing to pay more. Under the circumstances, whilst we do not feel that the amount allowed by the jury should be reduced, we find no sufficient reason for increasing it.

The verdict and judgment appealed from are therefore affirmed.