142 So. 252

**McDONALD et ux. v. SHREVEPORT RYS. CO. et al.**

No. 31595.

March 30, 1932.

Rehearing Denied May 23, 1932.

Wise, Randolph, Kendall & Freyer, of Shreveport, for applicants.

Thos. W. Robertson, of Shreveport, and Guion & Upton, of New Orleans (Howard B. Warren, George W. Hardy, Jr., Frank J. Looney, Robert G. Chandler, Charlton H. Lyons, Aubrey M. Pyburn, Pike Hall, E. Wayles Browne, and Cecil Morgan, all of Shreveport, of counsel), for appellees.

Wilkinson, Lewis & Wilkinson, of Shreveport, amicus curiæ.

BRUNOT, J.

This is a suit against the two defendants, in solido, for damages for the death of the plaintiffs' son, who was electrocuted by a high-tension electric current furnished by the Southwestern Gas & Electric Company to the Shreveport Railways Company, as electric energy for the operation of the railway company's street cars in the city of Shreveport. The sum claimed is $125,363. The suit is based upon the alleged negligence of the defendants. Both defendants denied liability, and, under the terms of the contract between them, the Southwestern Gas & Electric Com-

pany called the Shreveport Railways Company in warranty. The case was tried by a jury, which returned a verdict rejecting the demands of the plaintiffs against the Southwestern Gas & Electric Company, but finding for the plaintiffs and against the defendant Shreveport Railways Company for the sum of $12,863, with legal interest thereon from May 29, 1930, the date of the judicial demand, and judgment was rendered accordingly.

On appeal to the Court of Appeal, 136 So. 169, 170, by the Shreveport Railways Company, the judgment appealed from was set aside, and judgment was rendered against both defendants, in solido, for $10,363, with legal interest thereon from May 29, 1930, and reserving to each defendant their respective rights, as between themselves.

On application of the Shreveport Railways Company to this court, a writ of review issued; the record has been sent up in response to the writ, and the case has been submitted for our consideration.

Electricity was delivered by the Southwestern Gas & Electric Company to a substation owned and operated by the Shreveport Railways Company and situated on that company's inclosed premises. The acts of negligence charged in the petition are that the substation was inadequately protected against entry therein; that the fence was not of sufficient height and of such construction as to prevent climbing over it; that the substation was so constructed as to attract the attention and arouse the curiosity of children; and that said station was not watched or guarded. It is alleged that the failure of the defendants to properly watch and guard the station against the approach of children to its dangerous parts is the proximate cause of the death of the plaintiffs' son.

From the Court of Appeal's statement of the facts of this case we quote the following:

"The Gas Company operates a large generating plant in or near the city of Shreveport, where it generates electrical energy and sells and distributes the power thus created to its customers, among which is the Railways Company. The lines conducting the electric energy carry 11,500 volts, alternating current, and deliver that voltage to what is generally known as a substation at 1245 Wilkinson street, where this accident occurred, between Samford avenue and the tracks of the Kansas City Southern Railroad. Plaintiffs lived at 2711 Samford avenue.

"The Railways Company owns a lot fronting 40 feet on Wilkinson street, and running back between parallel lines 142.5 feet on Samford avenue. The lot on which the McDonald residence is located fronts fifty feet on Samford avenue, and runs back 128 feet to the rear portion of the Railways Company's property. The substation of the Railways Company is located on the rear portion of its property, adjoining the McDonald property. The rear part of the lot on which the substation is built is inclosed by a mesh wire fence 5 feet high, with a two inch mesh, and this is surmounted by six strands of barbed wire, the highest being 27 inches above the mesh portion of the fence, making a fence 7 feet and 3 inches high. The inclosure is 40 feet by 63.5 feet, leaving a lot 40 feet wide and 79 feet long between the inclosure and the street.

"Inside this inclosure is a brick building 18 feet by 27 feet, in which is housed machin-

ery and other equipment. Also inside this wired inclosure is what is referred to as a wire tower on which were located the choke coils, and a series of box-like equipment. Some of them are flaring at the bottom somewhat in the shape of large bells, except they were square and not round, called lightning arresters. Interspersed around and among these instruments were a rather large number of what appears from the photographs to be glass or composition insulators. All of this equipment appears to be joined to a shelf-like frame, the base of which, except for the legs which reach the ground, is about a foot higher than the fence. There is attached to this frame and just above the bell-shaped lightning arresters a sign 'High Voltage, Outdoor Station.' No other warning signs appear about the inclosure.

"Underneath this tower is what is known as the switchhouse, sitting on the ground. Near the tower and between it and the brick building are what is known as the transformers, three in number. The McDonald garage was at the rear of the lot, and within a few inches of the inclosure. * * * The superintendent of the stations employed by the Railways Company, had seen children of the neighborhood, climbing the fence a number of times, but had never seen them actually in the inclosure, unattended. Two meter readers of the Gas Company came upon the deceased child in the inclosure shortly before the accident, unlocked the gate, and carried him home. One of them says he told Mrs. McDonald that her son was in the inclosure. Mrs. McDonald, however, says she has no recollection of the incident. It is conceded, though, that there was no way for the child to get into the inclosure, except by climbing

the fence, or getting upon his father's garage nearby and jumping over into the inclosure."

In the brief of the relator's counsel, pages 9 and 10, it is correctly said:

"The court further apparently found that the evidence disclosed that there was no 'regulation' or 'standard' which was used by the thousands of electric companies throughout the country to enclose similar substations. The Court of Appeal further reviewed part of the evidence showing warnings which had been given with reference to the danger of any one going into this inclosure and apparently found that the defendants had proved that warnings had been given to the plaintiffs, but the opinion expresses a conclusion that 'no sufficient warning was given to Mr. or Mrs. McDonald.'"

The Court of Appeal further held that the defendant's maintenance and operation of its substation was "obviously attractive to children," and therefore constituted an attractive nuisance.

There is no proof in the record that the substation was attractive to children. The Court of Appeal evidently assumed, as a fact, that it was, and its judgment seems to be based upon that assumption and upon its conclusion that the defendant did not adequately warn the plaintiffs of danger of contact with its wires carrying high-tension electric current into and out of its substation. With respect to defendant's warning to the public, it is shown that above the transformer box of the substation a warning sign was conspicuously exposed, and the premises were inclosed with a mesh wire fence, topped with strands of barbed wire to a height of seven feet, and entered through a gate that was kept locked.

With respect to the residents of the vicinity and their children, it is shown that all of them were aware of the danger to which they would be exposed if they entered the defendant's inclosed premises. Several parents of children of the vicinity, including Mrs. McDonald, one of the plaintiffs, whose residence adjoins the defendant's premises, had been personally warned of the danger, and, in her testimony, she says she warned her son accordingly.

In our opinion, under the admitted facts and unrebutted testimony in this record, the following authorities apply and must be followed: Nicholas O'Connor v. I. C. R. R., 44 La. Ann. 339, 10 So. 678; Tomlinson v. V., S. & P. Ry. Co., 143 La. 641, 79 So. 174; Jackson v. Texas Co., 143 La. 21, 78 So. 137, L. R. A. 1918D, 150.

■ There are numerous decisions of the courts of last resort of the common-law states holding that electrical equipment operated in the customary manner on private property is not considered as an attractive nuisance. In this connection we cite Chicago & E. R. Co. v. Fox (Ind. App.) 70 N. E. 81; Nixon v. Montana, W. & S. W. R. Co., 50 Mont. 95, 145 P. 8, Ann. Cas. 1916B, 299; San Antonio & A. P. R. Co. v. Morgan, 92 Tex. 98, 46 S. W. 28; Stamford Oil Mill Co. v. Barnes, 103 Tex. 409, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111; Flippen-Prather Realty Co. v. Mather (Tex. Civ. App.) 207 S. W. 121; Smalley v. Rio Grande Western R. Co., 34 Utah, 423, 98 P. 311; Zartner v. George, 156 Wis. 131, 145 N. W. 971, 52 L. R. A. (N. S.) 129; Devost v. Twin State Gas & Electric Company, 79 N. H. 411, 109 A. 839; Anderson v. Fort Dodge, D. M. & S. R. Company, 150 Iowa, 465, 130 N. W. 391; Davis v. Malvern Light & Power Company, 186 Iowa, 884, 173 N. W. 262; Mayfield Water & Light Company v. Webb's Adm'r, 129 Ky. 395, 111 S. W. 712, 713, 18 L. R. A. (N. S.) 179, 130 Am. St. Rep. 469.

There are a number of other cases adhering to the doctrine announced in the cited cases. The Mayfield-Webb Case is directly applicable to the case at bar. In that case the court says:

"Here the wire was 18 feet above the street. It could only be reached by a person climbing the electric light pole or walking up the guy wire of the telephone company. In all the cases where a liability has been imposed for what is known as an attractive nuisance to children, the nuisance has been placed within their reach. We know of no case where this has been applied to things put 18 feet above the ground, which may only be reached by climbing a pole or walking up a wire. Such structures are not an invitation to children to use them."

■ In this case it is shown that the high-voltage wires of the Southwestern Gas & Electric Company, that caused the electrocution of the plaintiffs' son were approximately eighteen feet above the ground, beyond the reach of any one, and that it was no ordinary feat for a 7 year old child to climb up to them. It is admitted that, in addition to the location of the wires being beyond human reach from the ground, the defendant's premises were entirely inclosed by a well-maintained fence seven feet high; the only entrance thereto being through a gate that was kept locked.

Under the facts of this case, to hold the defendants liable for the death of the plain

tiffs' son who, in a venturesome spirit, obtained access to defendant's premises in some unexplained manner, and climbed into the zone of danger, would be without precedent in the jurisprudence of this country.

For the reasons stated, it is decreed that the judgments of the district court and of the Court of Appeal, rendered herein, are avoided and reversed, and this suit is dismissed at plaintiffs' cost in the three courts.