TATE, Judge
(dissenting).
In reversing the trial court findings of fact, the majority has blithely overlooked and completely discounted credible evidence in favor of the plaintiff, accepted by the trial court as correct. It has also, contrary to law, placed upon the plaintiff the burden of proving his case beyond a reasonable doubt, instead of simply by the preponderance of the evidence.
This is a pity, because if the majority had squarely faced up the facts correctly found proved by the trial court, then the court is presented with a most interesting and close question as to the legal duty of an owner of premises foreseeably exposing children to an ultra-hazardous situation. *97 While I think the trial court resolved this legal question correctly also, unfortunately the majority has so misconstrued the facts as probably to prevent the plaintiff from obtaining a fair review of his legal contentions by a higher court.
An appellate court must not view itself as the repositary of all wisdom and as the sole dispenser of justice, in a process in which the trial courts serve merely as the medium to record testimony for the reviewing tribunal’s omnipotent and omniscient determination of the factual and legal issues of the litigation. Our appellate review of facts was never intended to confer on us the power to disregard sworn evidence in the record accepted as correct by the trier of fact, just because according to our own limited experiences we may individually think it to be inaccurate or improbable, based merely upon our suppositions, and in defiance of the actual testimony in the record.
Our district court brethren have a responsibility in the administration of justice at least equal to ours. We are not to presume that they perform their function any less conscientiously than we attempt to do ours.
Under the well settled jurisprudence, the trial court’s judgment is presumed to be correct until the contrary be shown; a trial court’s factual determinations should be accepted as correct on review in the absence of manifest error; and the evaluation of credibility is a matter peculiarly within the province of the trial court, which sees and hears the witnesses, so that the trial court’s evaluation is not to be lightly disregarded by the appellate tribunal, which reads only the cold record. Robertson, Appellate Review of Facts in Louisiana Civil Cases, 21 La.L.Rev. 402 (1961), and the many cases cited therein.
Yet a majority of this court, without having seen a single witness, obliterates from the record any evidence favorable to the plaintiff’s factual position. It is as if the majority opinion were written by accepting in toto the skillful and persuasive arguments of the counsel for the appellant. Indeed, the majority opinion could just as well have been dictated at the conclusion of the appellant’s oral argument, before the majority heard the appellee’s side of the case, or read the actual evidence in the record, or was exposed to the trial court’s evaluation of such evidence; for little or no mention is made of the factual circumstances upon which the trial court properly relied in its factual conclusions.
I.
Let us first consider the majority’s treatment of the facts.
The majority does admit that the five-year-old child’s leg was seriously burned. The factual issue before us, then, is simply whether these burns were sustained as a result of the fires and combustible liquids on the Elmer premises.[1]
The trial court, relying on the testimony that Elmer’s fires were the only ones in the vicinity, as well as upon credible evidence that the child’s clothes were saturated with what appeared to be the combustible fuel left by Elmer near the fires, together with the medical evidence relating to the nature of the child’s burns, concluded that the plaintiff had borne its burden of proving by a preponderance of the evidence the factual part of his case — i. e., that the child *98 was burned by Elmer’s insufficiently guarded fires.
How does the majority reverse this determination ?
It does so:
(1) By concluding that the child may have been burned by other fires, even though the evidence indicates there were no other fires in the rural vicinity. (I fail to find any significance in the fact, seized on as important by the majority, that there was a trash burner in the back yard in which on occasion the boy had helped burn the trash, in the absence of any evidence whatsoever that there was a fire in this trash burner on the Sunday morning of this accident.)
(2) By discounting, in the face of certain evidence as to the cause of the child’s burns, the testimony that his clothes were saturated with the combustible fluid, and by commenting that this saturation was probably water.

The Law.

The primary error in the majority’s review of the factual issues is its assumption that the plaintiff must prove his case beyond a reasonable doubt, as in the criminal law, instead of merely by the preponderance of the evidence. In civil cases, of course, the burden of proof is not as heavy as the majority finds. Succinctly, the plaintiff wins if 5l'% of the evidence proves his case — he does not need to prove by 100%.
As stated by our Supreme Court in Edwards v. Shreveport Creosoting Co., 207 La. 699, 21 So.2d 878, 879-880: “The law is clear that the plaintiff * * * bears the burden of proving his case with reasonable certainty, by a preponderance of the evidence. He is not obliged to furnish conclusive proof. * * * ‘By a preponderance of evidence is meant simply evidence which is of greater weight, or more convincing, than that which is offered in opposition to it. * * * ’ ” Or again, “ * * * it is not required that civil cases be proved beyond a reasonable doubt but only by the preponderance of the evidence.” Webber v. Wofford-Brindley Lbr. Co., La.App. 1 Cir., 113 So.2d 23, certiorari denied.
Or again, as the Supreme Court recently stated in Perkins v. Texas & New Orleans Railroad Company, 243 La. 829, 147 So.2d 646, “Recognizing that the fact of causation is not susceptible of proof to a mathematical certainty, the law requires only that the evidence show that it is more probable than not that the harm was caused by the tortious conduct of the defendant.”
As to the majority’s holding that the five-year-old boy may have been burned by other fires than those of Elmer’s, such a ruling denies recovery merely because of the naked possibility that there were other fires — for there is no evidence of any other fire in the vicinity.
For applying a similar stringent burden of proof, a majority of this very court was recently reversed in Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395, 397, where the Supreme Court flatly stated: “Causation may, of course, be proved by circumstantial evidence. In many instances, it can be proved only by such evidence. Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. Otherwise, the mere identification by the record of another possibility, although not shown to be causally active, would break the chain of causation.” [Italics by the Supreme Court.]
The majority’s persistence in the present case in requiring a plaintiff to prove his case beyond a reasonable doubt, instead of merely by a preponderance of the evidence, thus violates the settled jurisprudence that a party relying upon circumstantial evidence is only “required to produce evidence which excludes, with a fair amount of certainty, [i. e., not with absolute certainty,] every other reasonable hypothesis but the one relied on,” Lanza Enterprises, Inc. v. *99 Continental Ins. Co., La.App. 3 Cir., 142 ,So.2d 580, 582. See also American Employers Insurance Co. v. Schoenfield, La. App. 4 Cir., 144 So.2d 595, and cases cited therein.
In order for the plaintiff to prove that Elmer’s fires were the cause of the little boy’s injury, the majority has required him to exclude beyond a reasonable doubt, or to an absolute certainty, that no other fire caused it. Since the evidence shows no other fires in the vicinity than those of Elmer’s, the plaintiff has certainly excluded “with a fair amount of certainty”, that no other fires could have caused the injuries.
There is absolutely no evidence of any other fire in the vicinity. Yet the majority, in the face of this and of the jurisprudence, concludes that the child may nevertheless have been burned by another non-existent fire in the neighborhood.
The majority, defying the Supreme Court ruling reversing it in Naquin v. Marquette Casualty Co., has thus stubbornly persisted in applying its own rule that a plaintiff must prove his case beyond a reasonable doubt, not simply by a preponderance of the evidence as provided by the jurisprudence.

The Little Boy’s Blue Jeans.

The preponderance of the evidence indicates that young Archie’s long blue jean pants were saturated over the right leg with an oily fluid that looked and smelled like the fuel used in igniting and in intensifying the brush fires on the rear of the lot. See testimony of grandmother, the only witness who actually examined the trousers. Tr. 116, 118, 122 and 126.
It was after this that it was discovered that the little boy’s leg was severely burned, with the flesh coming off, so that the mother herself noticed only that the pants were wet, Tr. 88, 93, while the other witnesses did not examine for fuel oil in the excitement, Tr. 77, 142.
I find it difficult to understand the majority’s open-mouthed awe that no one but the grandmother noticed and smelled that the blue jean pants legs were saturated with the oily fluid. The grandmother is the only witness who had the chance to really look at the trousers before it was discovered how badly the little boy was burned, since she observed the boy while he came crying to her out of the field, and she took him into the house.
As one of the witnesses said, “ * * * it was a shocking thing. We pulled this trouser leg up and the flesh and some of the meat was sticking to the cloth.” In all of the excitement, with rushing the boy to the hospital and the shock at observing his serious burns, it is not surprising that the parents did not really closely examine the blue jean pants at the time, especially since from the child’s exclamations they knew he had received the burns out burning trash at the fires in the back, and since, I am sure, in these moments of family tragedy the witnesses had no thought of preparing themselves to testify in a lawsuit. (By the time the pants were washed and cleaned, it was no longer possible to verify the presence of the oily fluid observed by the grandmother.)

The Burns Themselves and the Medical Testimony Concerning Them.

At the time young Archie came running out of the field in which were the fires and nearby combustible fuels, his long pants still covered his legs, and the cloth itself of these trousers were not burned. Yet, underneath the trousers, the flesh of the right leg was burned and mangled almost to the bone.
Probably the most intellectually incomprehensible part of the majority’s opinion is its failure to give any significance to these circumstances or to the medical evidence interpreting them.
For such is the very evidence which excludes, to a fair amount of certainty, any other cause of the little boy’s burns than *100 the dangerous combination of fire plus nearby combustible fuels plus little boy with little boy’s natural curiosity and unawareness of danger, a combination that almost inevitably adds tip to, as here, a little boy burned.
I am frank to state that, without this evidence (ignored by the majority), I would not feel so strongly that the majority has erred in its reversal of the trial court’s factual findings. Undoubtedly, it is this evidence, together with the circumstance that the Elmer fires were the only ones in the vicinity, that brought the trial court to the conclusion, as it does me, that Elmer’s fault in creating an ultra-hazardous condition was the cause of the little boy’s burns.
The attending physician found that the inner side of the right leg had been damaged by severe second and third degree burns which had gone through the skin and exposed the muscle. The doctor was of the opinion, that the burns were caused by intense heat. The doctor further felt that they were consistent with a flash burn caused by an explosion of the fumes from the fuel igniting inside the saturated pants legs, severe enough to cause the damage to the flesh without burning the pants. Tr. 108-110.
There is no evidence, medical or otherwise, contradictory of this.
The majority, in ignoring this uncontra-dicted testimony, simply observes “it seems to us that the child’s clothes would have ignited and burned if they actually had been saturated with fuel oil before he came in contact with the fire. The fact that the clothes did not burn indicates [¿te, in the face of the uncontradicted evidence to the contrary.] that the dampness * * * was from water, and not from a highly flammable fuel * *
The majority’s omniscient assumptions, it must be admitted, would have been shared by the writer — if the medical and other evidence in this record did not prove to the contrary. I must humbly admit also, however, that, from my own limited experience, I am not an expert who knows everything; and I feel that the majority likewise should yield in its own predisposed beliefs and opinions, where the evidence proves that its personal suppositions are not well founded.
In closing on the subject, I should point out that the majority apparently feels that the little boy’s trouser legs were saturated with water, not oil. If so, how did the little boy’s leg get mangled, underneath the trousers leg without burning the trousers itself, by an intense heat burn?
One could speculate on the subject until doom’s day, without successful solution — • unless one accepts the only explanation advanced (and without contradiction) by qualified evidence in this record, namely, that the mangling was caused by “a flash burn” due to explosion of “gas fumes”, Tr. 108; “a flash burn, something that would just explode the fumes [confined] inside the pants leg and just go out. I imagine you could do that without setting the pants on fire”, Tr. 110; “an instantaneous flame that is not there long enough to ignite the part it comes in contact with”. Tr. 110. (Excerpts from testimony of the attending physician as to causation.)
Together with the evidence indicating that especially the pants over the burned leg was saturated with a fluid that looked and smelled like the combustible fuel carelessly left near the fires, I feel that the trial court was obviously correct in its finding that the little boy’s burns were reasonably proved to have been caused by the fire plus combustible fuel hazard created by the defendant’s insured. There is simply no other explanation in this record as to the factual causation of the little boy’s burns.

The Failure of the Men Working in the Field to Notice the Little Boy until after He Was Burned.

As an aside, I should also comment on the ‘majority’s gratuitous observation that *101 it is “inconceivable to us” that the three men absorbed at work in the field did not notice the little boy when he came in and when he left the field. (That, after he was burned, he came from where they were working is proved by the testimony of the grandmother, who saw him coming from that direction, as well as the corroborating circumstances that it was this fire and these combustible fuels that burned him.)
My own knowledge of human nature is not so inexhaustible and omniscient as is the majority’s. I do not find to be so strange and improbable the testimony of the three men that they did not notice the young boy in the field, due to the tractor noise (Tr. SS) and their own occupation with their dredging and fire-tending duties.
Two of them, it should be remembered, were involved in close and somewhat dangerous work, dredging a ditch with a tractor and placing a culvert therein; and the third was involved in the occupation of fire-tending, going from one fire to the other and dragging wood to these fires, an occupation which does not necessarily involve one in constant and acute observation of other activities in the field on this quiet Sunday morning.
(As to the latter individual, in my own personal experience, for example, I have become so much absorbed in similar routine tasks, such as mowing the grass, or in daydreaming while performing them, so much so that I have been startled suddenly to find that someone has approached right up to me without my having observed him until he spoke or otherwise broke into my absorption. I do not find it inconceivable, as the majority does, that a witness in a case should behave similarly, rather than as an ideal and perfect witness, observing everything exactly and without fail.)
In short, I think the majority has grossly erred by so ignoring the facts in the record, and in failing to accord any weight whatsoever to the trial court’s acceptance of what is really uncontradicted evidence.
II.
If the majority had accepted the facts preponderantly proved by this record, and then had nevertheless reversed the judgment in favor of the plaintiff, this dissent would not be so heated. For reasonable minds could differ as to the legal duties and consequences flowing from the facts found by the trial court.
The relevant facts are:
The owner had created an exceptionally dangerous hazard to children, by building fires and leaving near them a mixture of diesel and waste oil, which included other highly combustible elements, such as gasoline and kerosene, Tr. 167, 170, 177 cf. 162-163. These highly combustible fuels were left accessible to children of tender years, even though they were no longer needed at the scene. The landowner admitted that this carelessness was only through oversight.
At the same time, the landowner-insured should reasonably have anticipated the presence of young children near the fire and the fuel can. His six young grandchildren, who lived immediately adjacent to the field, were often on the premises and were not forbidden to come through the unlocked gate to it from their own yard. On the day of the accident there were also four other young children in the adjacent premises, ten young children in all.

Negligence.

Under all of these circumstances, the landowner, the defendant’s insured, was negligent in creating an unreasonable and foreseeable hazard to the young children in the immediate area, whose presence on the premises he should reasonably have anticipated. The essential basis of his liability is (a) the landowner’s creating an extremely hazardous condition through leaving the ineffectively guarded can of combustible fuel near the fires he had built, (b) with the knowledge that young children were nearby who could reasonably be ex *102 pected to be endangered thereby. Jackson v. Texas Co., 143 La. 21, 78 So. 137, L. R.A.1918D, 150; Hunt v. Rundle, La.App. 2 Cir., 120 So. 696.
As stated at Saxton v. Plum Orchards, 215 La. 378, 40 So.2d 791, 794: * * one is negligent in maintaining an agency which he knows, or reasonably should know, to be dangerous to children of tender years, at a place where he knows, or reasonably should know, children of tender years are likely to resort, or to which they are likely to be attracted by the agency, unless he exercises ordinary care for the protection of such indiscreet and youthful persons.’ ”
Inadequately guarded access to natural gas or gasoline, even without (as here) a fire nearby, has been held to constitute negligent conduct with regard to children whose presence should be anticipated. Jackson v. Texas Co., 143 La. 21, 78 So. 137, L.R.A.1918D, 150; Hunt v. Rundle, La. App. 2 Cir., 120 So. 696. Although the present combustible fluid is less volatile than either of these substances, the same rule should apply in the present case, where this combustible fluid was left inadequately guarded near a burning fire at a time when it was reasonably foreseeable that the nearby children were likely to resort there.
As the last-cited cases also illustrate, a young child cannot be expected to realize the extreme hazard to itself created by the proximity of fire and a combustible substance, while at the same time it is readily foreseeable that the young child’s natural curiosity and playfulness will attempt to put the two together. The present landowner therefore was charged with a duty to avoid this foreseeable and unreasonable hazard to children, the presence of whom on the scene was reasonably to be anticipated— such as by removing the dangerous substance from the immediate area of the fire, or by taking more effective steps to guard against access of children to this combustible substance and the nearby fire.
The general principle of liability is that stated at Section 312, Restatement of Torts: “A negligent act may be one which: * * (b) creates a situation which involves an unreasonable risk to another because of the expectable action of the other, a third person, an animal or a force of nature.” As the Restatement further notes, the possessor of land is subject for liability to licensees or others on the premises with his permission, if on his premises he conducts activities unreasonably dangerous to them (Section 341) or knowingly maintains a condition which creates an unreasonable risk of danger to them (Sections 342, 343).
See also: 65 C.J.S. “Negligence” § 74, p. 569, relating to duty of landowner to safeguard people reasonably expected upon his premises, especially children, from foreseeable and unreasonably dangerous hazards; 65 C.J.S. “Negligence” §§ 64, 66-68, pp. 555 et seq., regarding duties of those using or dealing with dangerous instrumen-talities, such as combustibles.
The majority suggests that, nevertheless, the landowner may not have been negligent because he had left an adult at the scene of the fires and the fuel. This overlooks that the basis of the liability, is the creation of an unreasonable hazard by leaving an ultra-dangerous substance at large, when there is no social necessity for the creation of the hazard.
If one creates an unreasonable hazard, he cannot relieve himself of responsibility for the effects therefrom by claiming that the inobservation of another also contributed to the injuries, since the basis of the liability is the creation of the unreasonably dangerous condition. It should, further, have been foreseeable that the adult left near the fires, with the primary duty of tending them, may not have maintained a constant guard over the combustible fuels too.
Actually, it is as if one sets off a time-bomb to ticking, with instructions to another to cut off the fuse before the bomb explodes. If the other neglects to turn off the bomb, the person who created the danger, by putting the time-bomb where it *103 could do liarm and by activating it, is nevertheless responsible for the explosion.
In our ever more crowded society of today, with ever more hazardous materials and means ready to the possession of all, each of us have come under an increasing duty to avoid creating unreasonable hazards to others peopling our mass civilization, and particularly to avoid creating unreasonable dangers to the young and the helpless, who are in a sense the wards of society and unable to protect themselves from the increasing hazards of everyday life. It is a duty of this nature which is at issue here.

Contributory Negligence.

Under the law of Louisiana, a child of seven years and under is incapable of contributory negligence. See Jackson v. Jones, 224 La. 403, 60 So.2d 729, Danna v. London Guarantee & Accident Co., La.App. 2 Cir., 147 So.2d 739. Furthermore, the negligence of a parent may not be imputed to a child to defeat recovery on the child’s behalf. Bergeron v. Houston-American Insurance Co., La.App. 1 Cir., 98 So.2d 723, certiorari denied, and cases therein cited.
However, as the Bergeron case notes, the parent’s own contributory negligence could yet bar his own individual recovery of the medical expenses incurred by him from the accident to the child. Contributory negligence, however, is a special defense which the defendant bears the burden of proving. Deshotels v. Southern Farm Bureau Ins. Co., 24S La. 23, 156 So.2d 465.
Although the evidence shows that the plaintiff father was aware that there was a fire burning on the property, Tr. 68, he did not know that there had been a five-gallon fuel can left near the fire until after the accident had happened, Tr. 69, 70.
The defendant has not, therefore, borne his burden of proving that the plaintiff father was contributorily negligent so as to bar recovery, by his failing to anticipate or guard against his child going into the fire area. Unlike the landowner himself, the father did not have notice of the unreasonably hazardous condition created there by the nearby presence of the combustible fuel can. It was not the fires themselves which created the unreasonable hazard, it was the presence near them of the inadequately guarded combustible fuel.
For the reasons assigned, the writer dissents from the majority’s reversal of the trial court.

. Tlie legal issue concerns the question of liability for the creation of an ultra-hazardous situation by the leaving of combustible liquids in the immediate vicinity of fires, where the presence of children from the next yard could reasonably be expected. The close legal issue, -which I will discuss next, is whether Elmer was negligent by creating an exceptionally dangerous hazard to children — the entire danger would have been avoided had he simply taken the combustible fluids away from where they sat near the fire, like a time-bomb waiting to be triggered by the nearby children, as could reasonably be expected.