SARTAIN, Judge.
Plaintiff appeals from an adverse judgment in the district court rejecting his demands for personal injuries arising out of a boat-pipe line collision.
On or about February 23, 1954, at about 10:00 o’clock a. m. plaintiff was operating a trawler type boat named the “Captain Vic”, owned by his father, Donatien Duet, when he struck a submerged pipe line near Bay Ste. Elaine in the Parish of Terrebonne. The rear one-third of the boat struck a four inch high pressure gas line owned, installed, and operated by the defendant, The Texas Company, resulting in an explosion of the line and a hole in the bottom of the boat, causing the latter to settle to the bottom in very shallow water.
The primary dispute of facts herein concern the location of the collision and the depth of the water. The trial judge found that the collision occurred 100 to 150 feet from an existing channel in which appellant was supposed to operate his vessel and that the depth of the water at the point of collision was about 18 inches. The record clearly supports the trial judge’s finding of fact in these respects. We quote with approval from his written reasons:
“The record shows that The Texas Company dredged a canal 6 or 7 feet deep and about 70 feet wide across a shallow bay leading to several drilling locations in the Bay Ste. Elaine area, for the purpose of transporting equipment and men in its operations, and that a 4-inch high pressure gas line was laid on the far side of the levee away from the canal. The testimony indicates that the rigs were about 1,000 feet or less apart along the canal; and that piling marked the location of the canal in the vicinity of the rigs and three or four 2x4 stakes marked the canal location between each rig. The spoil from the canal excavation was dumped on one side at a distance from the canal the length of the boom on the dredge. The spoil bank was estimated to be from 60 to 70 feet wide. The pipe line was laid on the far side of the spoil bank away from the canal. One ■ witness (TR-49) estimated the point of the accident (where the boat came in contact with the pipe line) to be about 150 feet from the channel. Another witness (TR-72) estimated that the accident occurred ‘roughly 100 feet or so’ from the channel, T50 feet I imagine’. These two witnesses were in a good position to make an estimate of the distance for the reason that they were familiar with the area and were members of a rescue party that dragged the Captain Vic off the pipe line and back into the channel. Their testimony was that they traveled to the locus of the accident in a boat similar to the Captain Vic, but were unable to reach the point of impact because of shallow water, and were required to reach the Captain Vic in a very shallow draft pontoon, from which they extended a rope from the Captain Vic to the vessel in the channel to drag the Captain Vic into the navigable water. Their testimony convinces us that *135 the Captain Vic was more than 100 feet from the channel.
The testimony establishes with reasonable certainty that the pipe line was on the far side of the spoil bank away from the channel, and was in about 18 inches of water. The testimony of all the witnesses, including the plaintiff Almate Duet, is that at the place of impact the Captain Vic was heading in the direction of the channel. It is self-evident from such a position that the Captain Vic had left the channel in which it had been traveling and had proceeded for some unknown distance beyond the pipe line and then turned back toward the channel.
The only person aboard the Captain Vic was its skipper Almate Duet. His description of the occurrence is very unclear.
His testimony is that he had gone to replace his brother as skipper of the Captain Vic, which was a standby boat that was used to haul supplies or crews, which were taken from The Texas Company camp at Bay Ste. Elaine and driven to the rig. He had made two or three trips when the accident happened. On the morning of the accident, the boat had been driven by its skipper, who was the only person aboard the boat, to the Bay Ste. Elaine camp to procure lunch for the crew on the rig. On arrival at the camp, the skipper ascertained that another boat had picked up the lunch, so he proceeded on a return trip from the camp to the rig. His story is: (TR-24) T was coming back from the camp to go to the rig. I was suppose to turn where I had turned that morning. I turned by a stake or a piling. I don’t remember what it was. They had something there, and when I decided to turn I went too far on the right. That’s when I hit that line.’ It seems obvious to us that when the boat left the channel it must have had traveled 150 feet or more in shallow water before making a turn to turn to the channel.”
The trial judge concluded:
“It is our view that the action of the skipper in leaving the channel completely and then traveling a substantial distance away from it in shallow water before making an effort to return to the channel, was pure carelessness and negligence in the operation of the boat, which negligence we hold to be the proximate cause of the accident.”
Appellant urges the application of the well established rule that it is the duty of those handling natural gas to exercise that degree of care commensurate with its dangerous character and necessary to protect the public from any foreseeable injury therefrom and cites Raphael Brothers v. Cerophyl Laboratories, Inc., 211 La. 354, 30 So.2d 116 and Jackson v. Texas Company, 143 La. 21, 78 So. 137, L.R.A. 1918D, 150. We have examined these cases and authorities cited therein and find them to be inap-posite and not controlling of the facts presented in the instant matter. In the Raphael Brothers case the defendant had constructed a three inch pipe line in a shallow ditch paralleling a concrete highway and passing through a culvert lying in the ditch. Plaintiff-motorist was unfamiliar with the area and in attempting to turn his vehicle around struck a portion of the pipe line lying exposed in the ditch. In the resulting fire he lost his trailer and a load of chickens. The court in applying the rule set forth above held that defendant had failed to exercise the high degree of care required in the installation of a high pressure pipe line near a public thoroughfare.
In the Jackson case the defendant owned and maintained a natural gas pipe line near to a path which was used by the public. The line developed a leak and children playing near the line would ignite the escaping gas for the purpose of recreation. On one of these occasions plaintiff’s child was severely burned. The court held that the detection of the leak could have been readily obtained through proper inspection and that the defendant was negligent in permitting the leak to continue over a long period of time.
*136 The case of Harris Drilling Co., Inc. v. Delafield et al., 222 La. 416, 62 So.2d 627, is more similar to the present matter. In the Harris Drilling Company case, defendant had constructed a plank road for the purpose of transporting equipment to and from a drilling location. At the end of the road was a turnaround. Located adjacent to the turnaround was a butane tank and pipe line. Plaintiff while maneuvering his truck permitted the left front wheel of his vehicle to slip off the platform and come in contact with the butane gas pipe line. The escaping gas ignited the truck. The court held that the defendant company was negligent in installing a butane system so close to the platform. However, the court also held that the plaintiff, with some 20 years of experience in working around and near oil field installations, was contributorily negligent in permitting his vehicle to slip off of the platform and come into contact with the gas line.
In the instant case the record does not reveal that the defendant was negligent in installing and maintaining the pipe line struck by appellant’s vessel. This pipe line was laid on the back side of the spoil bank and was some 60 to 70 feet from the edge of the channel. Further, the pipe line was not constructed near a public highway or path. To the contrary, it was constructed over the bottom of a body of water that the record indicates was not navigable for boats of the type'used by appellant and was certainly not accessible to foot traffic.
Assuming that under other circumstances the construction of the present pipe line might be considered negligence on the part of defendant, such negligence could not bé considered as a proximate cause of the damages claimed herein. The record as appraised by the trial judge is clear to us that the accident was caused by the negligence of appellant who, in broad daylight missed his turn on the channel and proceeded an additional distance of 100 to 150 feet, after it was known to him that he was in extremely shallow water and was out of the channel. Such negligence on the part of one who admittedly is an experienced captain and who for years had worked around drilling operations similar to the one conducted by defendant was the sole and proximate cause of the damages sustained by appellant.
For the above and foregoing reasons the judgment of the district court is affirmed at appellant’s costs.
Affirmed.