200 So.2d 420 (1967)
James B. WILLIAMS et al., Plaintiff-Appellees,
v.
CITY OF BATON ROUGE, Parish of East Baton Rouge Recreation & Park Commission et al., Defendants-Appellants.
No. 7035.
Court of Appeal of Louisiana, First Circuit.
May 29, 1967.
Rehearing Denied June 30, 1967.
*421 Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., Ralph Brewer, Baton Rouge, for appellants.
Jimmie R. Major, Baton Rouge, for appellees.
Before LOTTINGER, REID and SARTAIN, JJ.
SARTAIN, Judge.
Plaintiffs' minor son drowned while a patron of a swimming pool operated by *422 the East Baton Rouge Recreation and Park Commission. Suit against said Commission was authorized by Act No. 22 of 1964 Regular Session of the Louisiana Legislature. Judgment in the trial court was rendered in solido against Charles A. Green, father of the minor lifeguard, Jaural Leopold Green, and against the East Baton Rouge Recreation and Park Commission in favor of deceased's father, James B. Williams, in the sum of Two Thousand Five Hundred and No/100 Dollars and in favor of deceased's mother in the sum of Two Thousand, Five Hundred and No/100 Dollars. From an adverse judgment on the merits, defendants appealed. The plaintiffs also appeal from the awards of damages by the trial court on the ground that such awards are manifestly inadequate.
On June 13, 1963, the deceased, Charles Edward Williams, age 15, and his friend, Michael Yates, age 14, were swimming in the Brooks Park swimming pool. They arrived at the pool at approximately 1:10 p. m. and after spending approximately 45 minutes in the shallow end they decided to enter the deep part of the pool and shortly thereafter began jumping into the water, touching bottom, and pushing themselves upward to the surface. These activities took place near a ladder. The lifeguard, Jaural Leopold Green, was at his station on an elevated stand across the pool. Young Williams could not swim and his companion was a very poor swimmer. After jumping into the water and emerging five or six times, Yates observed that Williams did not surface after the last jump. He saw Williams walking on the bottom of the pool towards shallow water and became concerned about his friend's safety. He dove back into the water and then observed Williams lying on the bottom of the pool. He got back out of the pool and attempted in vain to solicit the aid of several people on the side of the pool. They apparently thought he was jesting. Yates then went to the lifeguard, Jaural Leopold Green, who likewise did not take young Yates seriously and remained at his station. He then went to the pool office to solicit the aid and assistance of the ticket taker. This person was on the phone and did not respond to Yates' plea for help. He then returned to the pool and dove into the water again to be sure that his companion was on the bottom. He returned to the side of the pool, again requested assistance in vain from those nearby, and for the second time told the lifeguard, Green, that his friend was drowning and receiving no help, returned to the bathhouse. His second conversation with the ticket taker was overheard by the head lifeguard, Elvin Dalcourt, who at the time was supervising a wall cleaning project in the bathhouse. Dalcourt immediately ran from the bathhouse to the pool, dove in, and pulled the body of young Williams to the surface, placed him on the side of the pool, and commenced to administer artificial respiration.
The Baton Rouge Fire Department was notified and in approximately five minutes a unit arrived. All efforts to revive young Williams proved unsuccessful.
Dr. Russell Mark Coco, Assistant Coroner for the Parish of East Baton Rouge, arrived some 15 to 20 minutes after Williams was removed from the pool. It was his opinion that young Williams died from "accidental drowning".
A considerable portion of the testimony is concerned with the condition of the water in the pool, the availability of safety apparatus, etc. To us these issues are insignificant in comparison with the conduct of Green, an agent and employee of defendant, Park Commission. For in our opinion the findings of the district judge with respect to the negligence of Green is imminently correct and amply supported by the record. In essence the trial judge did not consider the action of young Williams, a non-swimmer, going into deep water and engaging in the type of activity as he did as constituting negligence which contributed to and proximately caused his fatality. In *423 his written reasons for judgment the trial judge stated:
"Applying the facts to the applicable standard, the court is left with no alternative except to find that the conduct of Jaural Leopold Green, in failing to heed the cries for help of Yates, and in failing to lend the assistance for which he was employed, was negligence in unequivocal terms. It was inexcusable and unjustifiable for Green's not having acted in the performance of his duty; it is inconceivable why he failed to observe the plight of young Williams from his vantage point in the guard tower above the water. It is also more than evident that Green's reprehensible conduct was the proximate cause of the boy's death."
Notwithstanding the fact that Charles A. Green, father of the minor-lifeguard, Jaural Leopold Green, was sued as a codefendant for the alleged negligence of the minor, neither appeared to testify or offer a defense to the allegations of negligence on the part of the latter. The sole witness testifying as to the occurrence of the events up to the entry of Elvin Dalcourt in the chain thereof as set forth above was Michael Yates, who at the time of the trial was 17 years of age. The trial judge stated that this witness "appeared at the trial and told a very convincing story. His testimony was intelligent, exceptionally credible and not contradicted by defendants in any substantial way." A reading of this lad's testimony fully convinces us that the trial judge's comments are most appropriate.
Defendants' primary defense is the plea of contributory negligence on the part of young Williams. They cite as authority numerous cases which clearly express the jurisprudence of this state with respect to the duty owed by a swimming pool proprietor in Louisiana. This duty is that of ordinary reasonable care for the safety of patrons, having regard for the methods and contrivances necessarily used in conducting such a place and for the conduct of invitees using the premises in the manner they are designed and intended to be used. Benoit v. Hartford Accident & Indemnity Co., La.App., 169 So.2d 925; Walker v. Rose Hill Amusement Co., La.App., 167 So. 144; Rome v. London & Lancashire Indemnity Co. of America, La.App., 169 So. 132.
Defendants further cite McGuire v. Louisiana Baptist Encampment, Inc., La.App., 199 So. 192 for authority that a young boy 15 years of age with knowledge that he could not swim and who goes into deep water is guilty of contributory negligence precluding his parents from recovery for damages against the proprietor of a swimming pool for the youth's resultant drowning.
We have carefully examined the McGuire case and conclude that the facts presented in the instant matter are clearly distinguishable. Assuming that the act of a 15 year old going into deep water with knowledge that he cannot swim is negligence, such negligence here was not a contributing and proximate cause in the instant matter because there elapsed an interval of some 12 to 15 minutes from the first moment young Yates urged the assistance of lifeguard, Green, to the time that Dalcourt pulled Williams out of the water. The failure of Green, admittedly a capable lifeguard, to respond to the pleas of Yates on two occasions is to us incomprehensible and of such consequences as to completely overshadow the considerations of negligence on the part of young Williams in going into deep water.
We fully recognize that under some circumstances lifeguards on duty may become provoked and exasperated by the conduct of children committed to their supervision who feign distress or play or fake drowning. However, it is difficult for us to realize that such conduct could cause a responsible and prudent person to become so immune to the possibility of danger as to completely ignore pleas for help under the guise that all such pleas originate in jest. The immediate reaction of Dalcourt and his instantaneous response *424 to the situation clearly reflects what an ordinary prudent individual would do under the circumstances when charged with the same responsibility.
Counsel for defendant, Charles A. Green, father of the minor-lifeguard, Jaural Leopold Green, urges that the trial court erred in casting said defendant in judgment in solido with the Recreation and Park Commission and cites numerous authorities holding that a father is not liable for acts of a minor child wherein accidental injury is caused to and inflicted upon other children. We have carefully examined the authorities cited and are of the opinion that they are not apposite to or controlling of the situation here presented. Counsel for said defendant seems to be under the erroneous opinion that for a parent to be liable his child must have engaged in the use of a dangerous instrumentality to the knowledge or imputed knowledge of the parent. The liability of the defendant father herein is based on the authority of LSA-CC Article 2318 which reads as follows:
"The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
The same responsibility attaches to the tutors of minors."
Thus the two conditions which invoke the authority of this Article are (1) that the person inflicting the damage be an unemancipated minor, and (2) that said minor resides with his parent.
Thus a father is responsible for the torts of his minor child residing with him and this responsibility continues until such time as his parental authority and control over his son has been suspended, interrupted or destroyed by operation of law. In the case of Watkins v. Cupit, La.App., 130 So.2d 720, this court speaking through the late Judge Robert D. Jones reviewed the general law pertaining to the responsibility of parents for torts committed by a minor child. The opinion at page 723 contains the following:
"The theory of vesting liability in the father for the torts of his minor is clearly stated in Planiol, Traite Elementaire De Droit Civil, Vol. 2, Part 1, Nos. 909-910. In commenting on Article 1384 of the Code Napoleon of 1804, which is the source article of Article 2318 of the Revised Civil Code, it is stated:
`In truth, responding for the act of a minor is not responsibility for the act of another, but for one's own act; a person himself at fault, for not having supervised with sufficient strictness the minor confided to his care. He responds therefor, for his personal fault, * * *'
at pages 507-508. Further quoting:
"`1. Father and Mother. It is the father who is primarily responsible; * * *.
`It is necessary that the child live with his father or his mother; "living with them" is the language of Article 1384.
`Consequently, there is no responsibility, if the child lives regularly elsewhere as an intern, in an institution of learning, as an apprentice, or as a domestic; the responsibility of parents in such cases is replaced by that of persons who have charge of the surveillance of the child. * * * On the contrary, the responsibility of the parents subsists, if they permit him to reside outside or to be a vagabond.' (Italics ours.)"
One exception to the above rule is where the minor son is a member of and serving with the Armed Forces. Simmons v. Sorenson, La.App., 71 So.2d 377; Redd v. Bohannon, La.App., 166 So.2d 362. Where a minor was lawfully summoned by a sheriff to serve as a member of a posse comitatus, it was held that such service was without the authority or consent of the parent and that the parent was not responsible for an alleged *425 act of negligence on the part of the son doing such service. Coats v. Roberts, 35 La. Ann. 891.
Under the circumstances of this case the question posed is whether or not the employment of the son by the Recreation and Park Commission was of such a nature as to divest the father of control over his minor son as to relieve the former of any responsibility for the torts of the latter. A review of the jurisprudence fails to disclose any case for such authority. A perusal of the jurisprudence indicates that where the removal of the child as in the instance of military service or lawful summons to posse duty has been involuntary the responsibility of the parent under LSA-CC Article 2318 has been suspended. This is true even in the case where the minor was home on furlough. Simmons v. Sorenson, supra and Redd v. Bohannon, supra. In the latter case the minor voluntarily entered the service.
In Watkins v. Cupit, supra, we held that a parent is still responsible for the torts of the minor even where said parent permits the minor to reside outside the home or to be a vagabond. We also conclude here that the fact that the minor, Jaural Leopold Green, was employed, did not suspend the responsibility of his negligence attaching to his defendant father. The record does not disclose that the said minor was following to his peril directions from or instructions of his employer or doing anything that would place squarely on the shoulders of the employer the sole and only responsibility for young Green's tortious conduct so that it could be reasonably held that Green was following the orders of his employer to the exclusion of the natural and legal response he owed to his father. To hold that LSA-CC Article 2318 does not apply to a parent under the circumstances of this case would in our opinion extend one step further the recognized exclusions of the said Article and would be in direct conflict with the purpose and intent thereof. While we can envision a situation where a minor is required to obey the commands, wishes and instructions of his employer under such circumstances as would warrant the suspension of the aforementioned Article such is not indicated here.
We now turn to the question of quantum and direct ourselves to certain factors which must be considered. Briefly stated they include closeness of ties between the parties and the degree of love and affection, Andrus v. White, La.App., 101 So.2d 7; the age of the child and station in life of the parents, Brown v. Wade, La.App., 145 So. 790; probability and degree of future support by the child, Bourg v. Brownell-Drews Lumber Co.,120 La. 1009, 45 So. 972; and intelligence and other factors relating to the type of future life expectable by the child, Silverman v. Travelers Inc. Co., 5 Cir., 277 F.2d 257.
In the instant case the record reveals that the decedent was one of four children. He was of average intelligence, promoted to the 10th grade in school and had caused his parents no disciplinary problems. The testimony of the mother that young Williams was close to all members of his family remains uncontroverted. The record does not reflect any support which plaintiffs may have anticipated from their son and, accordingly, this factor is not considered by us.
In the award of damages considerable discretion is vested in the trial judge and should not be upset on appeal unless it is clear from the inadequacy or excessiveness of the award that the trial judge abused his discretion. In our opinion the award of $2,500. to each of the parents herein is so inadequate as to amount to an abuse of the trial judge's discretion.
For the limited purpose of considering the question of quantum we have reviewed and herewith cite the following cases as an aid in concluding that the awards herein granted were inadequate. In Lewis v. State, La. App., 176 So.2d 718, a father was awarded the sum of $7,500 for the death of his 15 year old son, whose conduct was less than *426 exemplary. In Randall v. Baton Rouge Bus Co., La.App., 114 So.2d 98, each parent of two children, aged 7 and 3, was awarded $12,000 for the death of each child who died instantly. In Himes v. Avinger, La.App., 85 So.2d 304, there was a jury award of $10,000 to each parent for the death of a 15 year old son. $7,500 was granted to each parent in Brooks v. State Farm Mutual Ins. Co., La. App., 91 So.2d 403, for the death of their only son, a child of 6 years of age. In Palmer v. American General Ins. Co., La.App., 126 So.2d 777, $12,500 was awarded to the mother for the death of her 15 year old daughter. Each parent in Fontenot v. Wood, La.App., 140 So.2d 34, was awarded $12,000 for the death of their 13½ year old son. In Breaux v. Flithers, La.App., 144 So. 2d 574, a mother was awarded $10,000 for the death of her 10 year old daughter.
Accordingly, the award of $2,500 to each of the parents herein is inadequate and should be increased by the sum of $7,500.
For the above and foregoing reasons the judgment of the district court awarding $2,500 to James B. Williams and Olevia Williams, is hereby amended to increase the sum to $10,000 to each of said parents. In all other respects the judgment appealed from is affirmed. Defendants-Appellants are cast for all costs.
Amended and affirmed.

ON APPLICATION FOR REHEARING
PER CURIAM.
Appellant, Charles A. Green, in his application for a rehearing urges that we erred by casting him in judgment on appeal in an amount in excess of the quantum assessed in the trial court. The basis for applicant's motion concerns the failure of plaintiffs to timely answer said applicant's devolutive appeal. The record reflects that judgment herein was rendered on September 7, 1966 and read and signed on September 14, 1966, in favor of each plaintiff in the amounts of $2500. The minutes of the trial court reflects that "on motion of counsel for defendants" an order of suspensive and in the alternative devolutive appeal was entered on September 23, 1966. Applicant states that said motion for an appeal was entered by the attorney for and East Baton Rouge Parish Recreation and Park Commission and that said attorney had no authority to move for an appeal on behalf of applicant and that the said minutes are in error insofar as the same reflects that both defendants appealed on this date. Plaintiffs timely answered the appeal entered by the said Commission. On December 19, 1966, applicant entered his own motion for a devolutive appeal and bond therein was fixed at $100, which bond was filed on the same date. Plaintiffs did not answer applicant's appeal. For reasons stated in our original opinion we increased the award to the sum of $10,000 for each plaintiff and held both defendants liable in solido.
Applicant urges that LSA-CCP Art. 2133 requires that in order to seek additional relief from a party cast, appellee must timely file an answer to the appeal stating the relief demanded.
The general rule is well established that an appellee cannot by answer to the appeal obtain an amendment of the trial judgment in his favor against another appellee. In such cases an independent appeal is required for such relief. Lomenick v. Hartford Accident & Indemnity Co., La.App., 189 So.2d 731; Howard v. Insurance Company of North America, La. App., 159 So.2d 560.
However, the facts presented herein are an exception to the aforementioned rule. We recognize for the purpose of this opinion that the appeal entered on September 23, 1966 was that of the Commission only and that the answer by appellee was also limited to the Commission's appeal. However, the appeal entered by the Commission must under the *427 circumstances of this case be considered as an unrestricted appeal which carries with it the right of the Commission to have considered along with its liability that of Green, the father of the minor who was an employee of the said Commission. This must be accepted as having merit because to do otherwise would limit Green's liability herein to the Commission itself to an amount far less than a sum said Commission is legally entitled to receive from Green. For under the well established jurisprudence of this state an employer has a right of action against his employee for any sum said employer is obligated to pay an injured third party by virtue of the said employer's vicarious liability.
The question of an appeal by one of several defendants and the consequences of either said appeal or the appellee's failure to appeal (which is analogous to failure to answer) from a judgment pertaining to one defendant has been considered by our appellate courts on several occasions. In the recent case of Murry v. Bankers Fire & Marine Insurance Co., La.App., 198 So.2d 532 is contained the following: (p. 538)
"However, the unrestricted appeal of Bankers, the defendant cast, entitles Bankers to have the judgment amended to as to hold Aetna solidarily liable with it (within the respective policy limits). When only one of two defendants is cast, his appeal brings before the reviewing court the question of the appellee defendant's solidary liability with him to the plaintiff. Emmons v. Agricultural Insurance Co., 245 La. 411, 158 So.2d 594; Fontenot v. Grain Dealers Mutual Ins. Co., La.App. 3 Cir., 168 So.2d 478; Vidrine v. Simoneaux, La.App. 3 Cir., 145 So.2d 400. Therefore, by this appeal an appellant defendant is entitled to have the judgment amended in his favor so as to hold an appellee defendant solidarily liable with him. Vidrine v. Simoneaux.
In Vidrine v. Simoneaux, La.App. 3 Cir., 145 So.2d 400, we held that one appellant defendant's appeal (Simoneaux) brought up before the appellate court the question of the solidary liability with him of another defendant (Stelly), an appellee who had been dismissed from the suiteven though Simoneaux had not filed a third party demand against Stelly, nor had the plaintiffs Vidrines appealed rejection of their claim against Stelly. We reasoned this result is necessary to effectuate the purposes of the 1960 amendment of Civil Code Article 2103, which was intended to prevent a plaintiff by inaction from depriving one solidary obligor of contribution from another, and that no useful purpose will be served by requiring the appellant obligor to institute separate proceedings subsequently to enforce contribution. 145 So.2d 405-406. The Supreme Court specifically approved our holding in this decision. Emmons v. Agricultural Insurance Co. at 158 So.2d 599.
We think this holding is determinative of the present issue and entitles Bankers to amendment of the judgment holding Aetna liable as co-insurer." (Emphasis ours)
Accordingly, the motion by Green for a rehearing on the above and other grounds together with the application of the East Baton Rouge Parish Recreation & Park Commission for a rehearing for reasons stated in their respective motions are herewith denied.
Rehearings denied.