202 So.2d 345 (1967)
Elmo CURRY et al.
v.
FRUIN-COLNON CONTRACTING CO. et al.
No. 7083.
Court of Appeal of Louisiana, First Circuit.
June 30, 1967.
Rehearing Denied September 27, 1967.
*346 Arnold J. Gibbs of Uter & Gibbs, Baton Rouge, for appellants.
Wallace A. Hunter of Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for appellees.
Before LOTTINGER, REID and SARTAIN, JJ.
REID, Judge.
This is a suit brought by Elmo Curry and his wife, Susie Sims Curry, for the alleged wrongful death of their minor son, Charles Leonard Curry against the Fruin-Colnon Contracting Company and the Farnsworth Division of Fruin-Colnon Contracting Company and the Insurance Company of North America.
Plaintiffs claim that their young son Charles Leonard Curry was drowned in a man-made hole or pit which was dug and filled with water by the defendant contracting company. The accident happened on August 24, 1964 at about 1:30 o'clock P.M.
Plaintiffs claim that the pit or hole into which this boy fell and drowned was not posted or barricaded in any way and there was a pathway along side of it, used by children and adults in the neighborhood. Plaintiffs rely on the doctrine of res ipsa loquitur and in the alternative the doctrine of an attractive nuisance, and the further alternative the negligence and lack of care on the part of the defendant contracting company. The suit was for the sum of $90,591.12 with legal interest from judicial demand until paid.
Subsequently plaintiffs filed an amended and supplemental petition in which they make Philip R. Farnsworth and Company and/or Philip R. Farnsworth Company, Inc. and its insurer Maryland Casualty Company party defendants in addition to the other defendants.
Fruin-Colnon Contracting Company and the Insurance Company of North America and Fruin-Colnon Contracting Company Farnsworth Division filed an answer which was a general denial to the allegations, except they admit that at about the time and place alleged the young boy, Charles Leonard Curry was found to have drowned. They deny any negligence, set up that at about the time and place alleged Fruin-Colnon Contracting CompanyFarnsworth Division was engaged in certain work in *347 connection with a portion of Interstate Highway No. 10 and that the work was being carried out with all possible safeguards, areas where the work was being done were designated as a construction area and that no one except authorized personnel in connection with the construction was supposed to be admitted into said area. All of which must have been known by plaintiff and their minor son.
Respondents further allege that plaintiffs' minor son was a trespasser in fact and in law and that their only duty owed to him was the duty of not willfully or wantonly injuring the boy, and they deny any violation of this obligation. Alternatively, respondents allege that prior to the happening of the incident plaintiffs and their son were warned and told on numerous occasions that the boy should not enter upon the area where the incident sued upon occurred, and should not endeavor to be present in or about that area, and that the plaintiffs' son deliberately and willfully violated and disregarded all such warnings and instructions. They further set up negligence of the boy as proximately causing and contributing to the incident sued upon.
Subsequently Philip R. Farnsworth Company and/or Philip R. Farnsworth Company, Inc. and Maryland Casualty Company filed a motion for a summary judgment on the grounds that there were no germane issues as to material facts based on the proposition that Philip R. Farnsworth and Company, Inc. is a separate legal entity from Farnsworth Division of Fruin-Colnon Contracting Company, and that Philip R. Farnsworth and Company, Inc., had conducted no active business since the year 1963 and had nothing to do with the construction of the portion of Interstate Highway No. 10 in connection with the construction of the east approach of the new Mississippi River bridge at Baton Rouge, Louisiana, on or about August 24, 1964. They further set up that the Maryland Casualty Company had never insured Farnsworth Division of Fruin-Colnon Contracting Company, and particularly in relation to the construction of the portion of the east approach to the new Mississippi River bridge. This motion for summary judgment was granted by the Court, and plaintiffs suit as to these defendants, Philip R. Farnsworth Company and/or Philip R. Farnsworth Company, Inc. and Maryland Casualty Company was dismissed with prejudice at plaintiffs' costs.
Subsequently the Lower Court with written reasons assigned in the record rendered judgment in favor of the defendants rejecting plaintiffs' demand and dismissing this suit at their cost. From this judgment plaintiffs have brought this appeal to this Court.
There seems to be very little dispute as to actual facts. There is no question but what the boy was drowned in this hole or pit on the right of way where the defendant construction company was engaged in constructing the east portion of the approach to the Mississippi River bridge on U. S. Interstate Highway No. 10. The pit was a large hole measuring approximately 20 feet, or more long by a width of about 8 or 10 feet and a depth of approximately 5 to 6 feet. The pit had lumber, boards and large and small pieces of construction forms located in it, and floating on the water. The location of the hole or pit was the 800 block of South Twelfth Street near South Tenth Street and South Boulevard.
It is equally true that the hole into which the boy fell and was drowned was not posted or barricaded and there was a pathway which went right by this water hole and was used by children and adults in the neighborhood. The neighborhood was composed of most entirely colored families and there were some fifty children in one block and about a hundred in the two blocks along side the construction area. The children played ball under the approach and in the neighborhood, went to and from school and to and from church and *348 the grocery store along the building site. In addition to that the older people used this path for the same purposes as it was a short cut to the bus which they caught to go to their work, or go to town.
On the date of the incident Charles Curry got up about 8:45 and was sent to the store by his mother. He was gone about 20 minutes and he came back and stayed about an hour, at which time he ate his breakfast. After that he left to play for awhile and then came back home, and had his dinner. After dinner he left to go out and play some more and that was the last time his mother saw him alive.
There is no direct testimony as to who saw the boy fall into the pit. There were some children playing around there and they were run off a time or two by employees of the defendant company. One of them claimed that he had to take a stick to chase them off. When Charles fell into the pit the children scattered and three boys came and reported it to his mother, it was reported to Dr. James that the boy fell into the pit and Dr. James, who lived only a few doors from the Curry home immediately went to the scene. One or two employees of the defendant company gathered around and one of them Mr. Huey J. Legier assisted in bringing the boy out of the pool. Attempts were made by Legier and Mr. O'Conner, the city police, fire department, juvenile officer and Dr. James to revive the boy by artificial respiration, but were unsuccessful. The boy was pronounced dead by drowning by Dr. James, and there is no dispute about this fact.
Appellants set forth some nine errors committed by the Trial Judge which basically are as follows: First, that the Court erred in finding as a fact that the construction company constantly attempted to keep children out of the construction area; that the construction company was not negligent in failing to fence or barricade the pit or excavation and put up danger signs; that the construction company had met the required standard of conduct required of it; that it did not believe that it was the defendant company's duty to use reasonable care to warn children not to play within the construction area; that the Trial Court further erred in finding that the defendants' warnings were adequate and that they were not given once but many times; that the Trial Court erred in ruling it did not believe that a distinction existed between a large draining canal and the type of excavation or pit into which the boy was drowned; that the Court erred in not being convinced that a boy of such tender years that he would fail to realize the risk involved in this dangerous excavation; that the Court erred in taking the facts as a whole and finding that they tipped the balance in favor of the defendant.
Basically, these errors are, first, that the company did not keep the proper standard of protection in warning for people going on the site of the construction, that the pool filled with water was not an attractive nuisance, that the boy was old enough to be guilty of contributory negligence and finally that the Court failed to render a decision in favor of plaintiff and award appropriate damages. We will take these errors up in the groups lastly set out.
The first question to be solved is the question whether the defendant company put up proper standards and proper warnings of the dangerous situation there. There is no question but what there were no signs marked danger, no barricades of any kind along the path and the only evidence in the record was that the boys were constantly warned to stay away from there when they would come close to the hole. There is no direct evidence that plaintiffs' son was included in these groups of boys who were warned, although one or two witnesses testified they recognized him as one being in the group at one time.
In this connection we quote herewith Standard Specifications for Roads and Bridges of the Louisiana Department of Highways Section 7.07 of the Public Convenience *349 and Safety and Section 7.08 Barricade, Danger and Warning and Detour Signs, as follows:
"Section 7.07Public Convenience and Safety:
The contractor shall at all times so conduct his work as to insure the least practicable obstruction to traffic. The convenience of the general public, the residents along and adjacent to the highway, and the protection of persons and property are of prime importance and shall be adequately provided for by the contractor. Fire hydrants on or adjacent to the highway shall be kept accessible to the fire apparatus at all times and no material or obstructions shall be placed within 10 feet of any such hydrant. Materials stored upon the highway shall be placed so as to cause no unnecessary obstruction to the traveling public * * * During the progress of the work, the contractor shall provide for local traffic to provide property within the closed portion of the work * * * Unless specifically otherwise provided for by the plans and/or special provisions, the cost of all necessary materials and all other costs incidental to the public's convenience and safety shall be borne by the contractor and shall be included by him in his bid prices for the various items appearing in the proposal and contract * * *
"Section 7.08Barricades, danger, warning and detour signs:
The contractor shall provide, erect and maintain all necessary barricades, suitable and sufficient red lights, danger signals and signs, provide a sufficient number of watchmen and take all necessary precautions for the protection of the work and workmen and safety of the public. Highways closed to traffic shall be protected by effective barricades on which shall be placed acceptable warning signs. The contractor shall provide and maintain warning and detour signs at all closures, intersections and along the detour routes, directing the traffic around the closed portion or portions of the highway, so that the temporary detour route or routes shall be indicated clearly throughout its or their entire length. Such warning and detour signs shall conform to the Louisiana Manual or Uniform Traffic Control Devices. All barricades and obstructions shall be illuminated at night and all lights shall be kept burning from sunset to sunrise. As a precaution against failure of lights, all barricades placed by the contractor shall be equipped with reflector buttons, discs, scotchlite or other suitable light reflecting material satisfactory to the engineer. The contractor will be held responsible for all damages to the project due to failure of the signs and/or barricades to properly protect the work from traffic, pedestrians, animals, and from all other sources, and whenever evidence of any such traffic is found upon the unaccepted work, the engineer will order that the work, if in his opinion it is damaged, be immediately removed and replaced by the contractor without cost to the Department. The contractor's responsibility for the maintenance of barricades, signs, and lights shall not ceases until the project shall have been completed and accepted."
We find that the defendant contractor failed to comply with Section 7.08 by not maintaining necessary barricades, suitable and sufficient red lights, danger signals and signs and take all necessary precautions for the safety of the public, particularly in view of the fact that they knew or should have known that this was in a thickly settled neighborhood with a large group of children who were naturally attracted by anything unusual happening in their vicinity.
According to Mr. Milton Ailes, project engineer for Farnsworth Division, Fruin-Colnon Contracting Company the project on which the defendant company was working *350 was the east approach to the new Mississippi River Bridge connecting Louisiana Interstate Highway No. 10 with the west bank of the Mississippi River. He testified at length concerning what work was being done at the scene of the accident. They were in the course of building and erecting piers which would support the bridge approach. The first thing they did was to excavate these ponds down some six feet and at the bottom of which they would drive the concrete piling. About a foot below the top of these pilings they would erect a footing, a wide platform which tied in the entire structure. After the bottom foundation had been poured it is necessary to "cure" the concrete. To do this it is necessary for ten days to pour water upon the concrete and the piers which necessarily fills up the hole with water. These poles and concrete are wrapped in burlap on which the water is poured in order to effect this cure. They must remain that way for ten days. Subsequent to the ten days the water is then pumped out of the hole and the fill of dry dirt is poured into the hole filling it up. This is the reason for these holes and the fact that they had remained open with water in them.
The next step to consider is whether or not this was an attractive nuisance, especially to small children. In this respect our Courts have divided.
The case of Saxton v. Plum Orchards, Inc., 215 La. 378, 40 So.2d 791 gives a description of an attractive nuisance. This case held that in order to make out a case under the attractive nuisance doctrine there must appear:
"`1. That the injured child was too young to understand and avoid the danger.
"`2. That there was reason to anticipate the presence of such children, either because of some attraction on the premises or because the danger was in some place where children had a right to be.
"`3. That there was a strong likelihood of accident.
"`4. That the danger was one other than those ordinarily encountered.
"`5. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances."
In the Saxton case, supra, a four year old child was drowned in a pool on the defendant's land. The Court held that the attractive nuisance doctrine is one who maintains upon its premises a condition, instrumentality etc. dangerous to children of tender years because of their inability to appreciate the peril which may reasonably be expected to attract such children to the premises must exercise reasonable care to protect them against such danger.
The pool in this case, the Saxton case, had been made by an excavation some 200 feet in length by 20 to 30 feet in width with a depth of about 4 to 10 feet. This pool was about twice as large as the instant pool or hole involved in this suit.
The comment is made in this case that the Courts of Louisiana have recognized and accepted the fact of nuisance doctrine though perhaps in most of the cases where the doctrine was invoked it, because of the peculiar facts of the situation involved, was not applied.
We feel that the peculiar facts in this case, coupled with the regulations of the Louisiana Highway Commission for these kind of dangers make the attractive nuisance doctrine applicable to the small children in this neighborhood.
Another case which holds that a pond is an attractive nuisance is Burris v. City of New Orleans, La.App., 86 So.2d 549 (Writs denied by the Supreme Court.) In this case the City of New Orleans maintained a garbage dump where a pool of water was accumulated. The child involved was four years old and the pool had an "abundant collection *351 of sticks, timbers and small logs and an unaccountable number of seagulls incessantly lined its banks." The Court held that this was an attractive nuisance for which the City of New Orleans was responsible. This Court, quoting from Fincher v. Chicago, R. I. and Pacific Railway Company, 143 La. 164, 78 So. 433, held as follows:
"`* * * a pool of water is attractive to children; but, for the application of said doctrine, it does not suffice that the thing from which the injury has resulted was in itself attractive, or, in other words, was such that the instincts of children would prompt them to meddle, or play with or in it, but it must be so situated as to lure or attract children from the safe place where they have a right and are likely to be, and induce them to enter the premises where the attraction is in order to meddle or play with or in it, and the danger of its so alluring children must be so obvious that a due regard for the safety of the children would suggest to a man of ordinary prudence and necessity of taking precautions for their protection. * * *"
Against these cases we have the case of Frensley v. Gravity Draining No. 5, La. App., 180 So.2d 743. This case held that a drainage canal with steep concrete banks with reinforced wire ladders every two or three hundred feet for safety purposes and which was an essential part of necessary draining system for the city was not "attractive nuisance" to a six year old boy who drowned in the canal. This case held that in differentiating it from the Saxton case, supra, that in the Saxton case the pool of water served no useful purpose, whereas in the Frensley case the canal was an essential part of a very necessary drainage system for the entire city of Sulphur and vicinity. It further held that this criterial balancing of the utility of the hazard against the foreseeable harm to children were not stressed in the Saxton case but are now well established in the law of attractive nuisance.
The case of Holland v. Vidrine, La.App., 133 So.2d 809 (3rd Cir. 1961 writ denied) a child drowned in the stock pond on defendant's farm. One of the determining factors for the holding that the stock pond was not an attractive nuisance, was the utility of the pond to the owner.
In the case of Slaughter v. Gravity Draining District No. 4, La.App., 145 So.2d 50 (3rd Cir. 1962) which involves an eleven year old child, states the law as follows:
"In determining whether a body of water is an attractive nuisance in a particular case, many factors must be considered, such as the age of the child, his ability to understand and avoid dangers, whether the proprietor has reason to anticipate the presence of children, whether there was a strong likelihood of the accident and whether the danger was one other than those ordinarily encountered. Other factors to be considered include whether the facility did or did not serve a necessary or useful purpose, which means could have been employed to avoid the danger, and whether the precautions taken were reasonable. See Burris v. City of New Orleans [La.App., 86 So.2d 549] supra."
In these three cases as well as other cases cited in defendants' brief appellees rely on the doctrine of the utility of the canal or pond to the general public in relation to one which has no useful purpose. However, the distinction must be made that this hole or pond of water, while it might be necessary for curing of the cement, was required by the regulations of the Highway Commission to have proper danger signals and signs, or a sufficient number of watchmen in order to protect the general public. We believe that this regulation overcomes the utility of this little hole for the construction of the east approach to the Mississippi River bridge. If the Highway Department did not intend the general public should be protected from such dangerous situations as this they would never have adopted this regulation Section 7.08.
*352 Another argument set out by the appellees is the fact that the child was eight years old, and almost nine, and that under the Louisiana law the age of the child has a bearing upon whether the nuisance is attractive to them or not. They quote from Volume 10 of the Louisiana Law Review, written in 1950, where the author concludes with this statement:
"The oldest child to recover under the attractive nuisance doctrine in Louisiana was a six year old girl whose injury resulted from a highly dangerous invisible and inodorous gas. (X La.L.R. 480)"
In the case of Jackson v. Texas Company, 143 La. 21, 78 So. 137, L.R.A.1918D, 150 (1918) the age of the child was given as "about six years."
The case of Jackson v. Jones et al., 224 La. 403, 69 So.2d 729 a stack of piled lumber was held to be an attractive nuisance to a seven year old child who was pushed by a playmate and fell upon a protruding nail. This case reversed a Lower Court decision and remanded the case with instructions.
In this case of Jackson v. Jones it was also held, quoting from 174 A.L.R. 1080-1166 as follows:
"* * * it is basically inaccurate to say that a seven year old child attending the first grade at school is legally responsible for the consequences of her impulsive act in walking or jumping on a two-foot pile of lumber located on the school playground while engaged in the game of "follow the leader" with her playmates. Indeed, we believe it is more realistic to hold, conformable with Borman v. Lafargue, La.App., 183 So. 548 and Bodin v. Texas Co., La.App., 186 So. 390, that a child of these tender years is to be considered as being incapable of contributory negligence in the absence of showing of extraordinary conditions which we do not find to be present here. To hold otherwise would effectually abolish the duty of care placed upon the contractor in this casethat is, that he should have foreseen that the children of the school would be attracted to and would go upon the unguarded lumber which was inherently dangerous to them."
The case of Slaughter v. Gravity Draining District No. 4, supra, the child was eleven years old who was attracted to the nuisance involved.
We believe that the proper criterion for the age of a child capable of being guilty of contributory negligence depends partly upon his maturity and capacity to evaluate circumstances and that he must exercise only the care expected of his age, intelligence and experience. See Plauche v. Consolidated Companies, 235 La. 692, 105 So.2d 269. Cook v. Louisiana Public Utilities Co., La.App., 19 So.2d 297 and Ledet v. Lockport Light and Power Company, 15 La.App. 426, 132 So. 272. In the Plauche and Ladette cases the child was twelve years old and in the Cook case the child was ten years old.
Appellee points out in his brief the duty owed to trespassers in the Restatement of Torts, Section 337 which reads as follows:
"A possessor of land who maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them of the condition if
(a) the possessor knows, or has reason to know of their presence in dangerous proximity to the condition, and
(b) the condition is of such a nature that he had reason to believe that the trespasser will not discover it or realize the risk involved."
We have no quarrel with these rules but do not believe that the defendant company exercised reasonable care to warn the children of this neighborhood of this condition, especially in view of the fact that the Highway *353 Regulations prescribes more adequate warning.
The appellees further argue that if this Court should find that the colored boy was an invitee instead of a trespasser that under the rules stated in American Jurisprudence the fact that the child was warned, or driven away, from the premises has been held to relieve the owner or occupant from liability for injury to the child on the grounds that it negates any implied invitation and further on the ground that it amounts to a fulfillment of the duty of the owner-occupant to the child. This rule further states however that the warning must be made by one in authority over the premises and it must be sufficient to bring home to the child's mind that it has no business to enter upon, or interfere with the property in question.
The fact that this child might have been warned two or three times to stay away, although it was not proven that he was included at all times in the crowd of boys who had been warned by different employees of the defendant company to stay away, or who had been run away.
Appellees cite no cases in support of this rule. The Court recognizes that boys will be boys and that they are constantly drawn to an attractive nuisance like a moth to a light. In regard to the contributory negligence and to the fact that the child "did not get the message" when he was allegedly chased from the premises by a workman, we point out that this child was very small for his age, he came from a poorer class of people and could not be held to the degree of intelligence and understanding as a child of better classes and education and intelligence could be held to.
We, therefore, hold that our Learned Brother was in error in holding that this was not an attractive nuisance and the child could be held guilty of contributory negligence.
This brings us to the question of quantum. Cases have been cited in both briefs giving a quantum anywhere from $3000.00 on up to $45,385.00, the last award being made by a Federal Court. In order to arrive at a fair amount of quantum it is necessary to look into the closeness of the ties between the parties and the degree of love and affection, the age of the child, and station in life of the parents, probability of future support by the child, and intelligence and other factors relating to the type of future life expectable for this child. See Andrus v. White, La.App., 101 So.2d 7, Brown v. Wade, La.App., 145 So. 790, Bourg v. Brownell-Drews Lumber Co., 120 La. 1009, 45 So. 972, and Silverman v. Travelers Insurance Company, 5 Cir., 277 F.2d 257. The facts in this case show that the child was one of five children of the marriage of his father and mother, and the youngest in the family. Both parents testified that the boy was close to all members of the family and being the baby of the family was especially close to them, coupled with the fact of his small size.
The record does not reflect that the plaintiffs anticipated any support from their son.
Plaintiffs in their brief incorporates a system whereby they are entitled to a grand total of $141,952.27 in spite of the fact that they only seek in their petition the sum of $90,591.12.
In the recent case decided by this Court, Williams et al. v. City of Baton Rouge et al., 200 So.2d 420, we awarded the sum of $10,000.00 to each parent for the death by drowning of a fifteen year old son. We believe that a similar award would be proper in the present case. According to the record the total medical and funeral expenses amounted to the sum of $603.12.
Therefore, for the foregoing reasons it is ordered, adjudged and decreed that the judgment of the Lower Court be reversed and judgment rendered in favor of the plaintiffs, Elmo Curry and Susie Sims Curry, and against the defendants Farnsworth Division of Fruin-Colnon Contracting Company and Insurance Company *354 of North America, severally and in solido, in the full sum of $10,000.00 each for the loss of their love and companionship of their minor son, Charles Leonard Curry, and that Elmo Curry have and recover the sum of $603.12 for medical and funeral expenses, together with interest from judicial demand until paid and all costs of this suit.
Reversed and rendered.